ERIK R. BRUNER (SBN 272804)
Bruner Law, APC
401 West "A" Street, Suite 1150
San Diego, CA 92101
Tel.: (619) 609-7032
Email: brunerer@gmail.com

Attorney for Defendant
Galo Rosario Bailon-Alvia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE GONZALO P. CURIEL)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case: 3:21-CR-00292-GPC |
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| 8) GALO ROSARIO BAILON-ALVIA, | Date: June 6, 2022 |
| Defendant. | Time: 8:30 a.m. |

**TO: RANDY S. GROSSMAN, UNITED STATES ATTORNEY; AND ASSISTANT UNITED STATES ATTORNEY NICOLE BREDARIOL**

GALO ROSARIO BAILON-ALVIA, by and through his counsel, Erik R. Bruner, hereby files the following Defendant's Sentencing Memorandum. Mr. BAILON is respectfully requesting the Court impose a sentence of forty-six (46) months in custody.

Sentencing Memorandum     U.S. v. Bailon-Alvia, et. al.     Case No. 21CR292-GPC

-1-

# I.
# STATEMENT OF FACTS

On September 29, 2021, Defendant GALO ROSARIO BAILON-ALVIA entered a guilty plea to count two of a two-count Indictment charging him with a violation of 46 U.S.C. § 70503 and 18 U.S.C. § 2, Possession of cocaine with intent to distribute on board a vessel and Aiding and abetting. Mr. BAILON adopts the factual basis in the plea agreement, which states that on December 6, 2020, he and others intentionally possessed 1,836 kilograms of cocaine on board a vessel with the intent to distribute it to others.

# II.
# EXHIBITS IN SUPPORT OF SENTENCING MEMORANDUM
# DOCUMENTS

**Defendant's Exhibit A**: Two Certificates of Accomplishment for Galo Bailon-Alvia for completing the In-Service Kitchen Skills Training Program.

# III.
# SENTENCING GUIDELINE CALCULATIONS

Mr. BAILON maintains the following Guidelines are applicable and appropriately applied in this case:

| | |
|---|---|
| Base Offense Level [U.S.S.G. § 2D1.1(c)(1)] | 38 |
| Base Offense Level with Minor Role [USSG § 2D1.1(a)(5)] | 34 |
| Minor Role [U.S.S.G. § 3B1.2(b)] | -2 |
| Safety Valve [U.S.S.G. § 2D1.1(b)(18), 5C1.2, 18 USC 3553(f)] | -2 |

Sentencing Memorandum    U.S. v. Bailon-Alvia, et. al.    Case No. 21CR292-GPC

-2-

| | |
|---|---:|
| Acceptance of Responsibility [U.S.S.G. § 3E1.1] | -3 |
| Appeal Waiver / Early Resolution [U.S.S.G. § 5K2.0] | -4 |
| Total Offense Level: | 23 |

Mr. BAILON has zero (0) criminal history points and is therefore in Criminal History Category I. The Guideline range for an adjusted offense level of twenty-three (23) and Criminal History Category I, is 46-57 months in custody. The Defense is recommending a sentence of 46 months.

### 1. Minor Role

Galo BAILON-ALVIA was a fisherman for his whole life until pirates robbed, shot, and almost killed him in November 2020. He was unable to continue making a living as a fisherman after that. He was suddenly without work for the first time in his life. He was desperate to find a way to earn money to feed his wife and children.

One week prior to his arrest, a friend of his told him about a lengthy fishing trip that would make him some decent money. He was put in touch with another man and told to go to the dock and be ready to work. Prior to him getting on the boat, however, he was informed that it was drugs they were going to transport rather than it being a fishing endeavor. He agreed to be paid USD $3,000 in advance, and then USD $20,000 upon his return from the 10-15 day trip. He was told no other details prior to boarding the vessel.

Sentencing Memorandum U.S. v. Bailon-Alvia, et. al. Case No. 21CR292-GPC

-3-

He and a few others were taken by boat to another boat that had the drugs already loaded on it. The drugs were not in plain site and were covered up under tarps and other concealing materials. He was then told to get on the second boat and the captain of the vessel was handed paper with coordinates for them to re-fuel during the trip. They were also given two satellite phones and two radios. The U.S. Coast Guard contacted and then arrested all of them not far into their trip.

Pursuant to U.S.S.G. § 3B1.2(b), Mr. BAILON requests the Court depart downward two (-2) levels for minor role. In examining the enumerated factors in the context of this case, it is clear that a departure for minor role is appropriate.

<u>First</u>, Mr. BAILON had a limited understanding of the scope and structure of the overall criminal activity. Mr. BAILON was first approached about this trip (he was initially told it was a fishing trip) only one week prior to the arrest. He knew little, if any, of the details or structure of how the smugglers acquired the cocaine or would further distribute it in any sort of wholesale network. It is clear that he played a limited role in a much larger drug trafficking enterprise that involved the production, packaging, and transportation of cocaine in and about another country. Mr. BAILON had no knowledge of any details concerning this larger production and distribution conspiracy, other than being recruited by one person whom he previously knew.

Second, Mr. BAILON was not involved in any planning for the larger enterprise. He had no control over planning as to where they were to transport the cocaine or in which manner. He was involved in no planning whatsoever. He and the others were given explicit instructions to follow, which is exactly what they did. Mr. BAILON had no idea how the smugglers obtained the drugs, how they were packaged, how they were trafficked to the boat, or how they were going to be distributed.

Third, Mr. BAILON had no decision-making authority. The decisions were made entirely by others and deviations from the predetermined plan and route were not permitted in any way.

Fourth, when considering this factor, the Court should be careful to consider not just the extent of Mr. BAILON's participation, it should consider the entire scope and nature of the conspiracy to distribute drugs, a conspiracy that reached far beyond the limited role that Mr. BAILON played. As the Commission has emphasized, even an "essential" role does not preclude minor role. This factor, too, warrants role reduction.

More specifically, Mr. BAILON was associated with the criminal organization in this case for a very short period of time. While the overall scope of the conspiracy may seem large, in that it involved transporting a large amount of narcotics hundreds of miles over open water, Mr. BAILON was only involved in a

Sentencing Memorandum        U.S. v. Bailon-Alvia, et. al.        Case No. 21CR292-GPC

-5-

very small part of the conspiracy. He had no knowledge of any one other than those on the boat, nor was he aware of any further actions by others related to the conspiracy. He and the others on the boat were literally just couriers on the water.

Fifth, and finally, this factor also weighs in favor of mitigating role. Mr. BAILON was set to receive compensation for his role in the conspiracy, but it pales in comparison to the overall value of the drugs, and profits that were to be realized by the other members of the conspiracy who created and put the plan in motion.

In addition, the Application Notes go on to state, "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." Here, Mr. BAILON is substantially less culpable than the other participants, as he stood to benefit substantially less and was involved in an extremely small manner.

Given Mr. BAILON's minor role in the offense, and that he is substantially less culpable than his co-participants, he should be given a two-level (-2) reduction pursuant to U.S.S.G. § 3B1.2(b).

### 2. Safety Valve

Mr. BAILON has complied with, and meets all the requirements set forth in, U.S.S.G. Section 5C1.2. He has zero criminal history points; he was not an

Sentencing Memorandum     U.S. v. Bailon-Alvia, et. al.     Case No. 21CR292-GPC

-6-

organizer or leader; no violence, injury, or weapons were involved in this offense; and he has provided the Government with all the information he possesses about this case. He, therefore, requests a 2-level reduction in the offense level pursuant to U.S.S.G. § 2D1.1(b)(6).

# IV.
# ARGUMENT

## A. 18 U.S.C. § 3553(a) FACTORS

### 1. History and Characteristics of the Defendant

Mr. BAILON is a 43-year-old citizen of Ecuador. He is married and has two children, ages 18 and 13. He and his wife also have custody of a family member's 1-year-old baby.

Mr. BAILON has lived in Ecuador his entire life. He had a good childhood free from any abuse or neglect. He left school before the 6th grade to work as a fisherman with his father, and he has worked as a fisherman ever since—at least up until pirates almost killed him. His parents were married for over 30 years when his father passed away from cancer. His family is very close to this day and they often gather for holidays and major events. His family has been very supportive of him throughout this case. Upon his release, he wants desperately to return to his family and home in Ecuador. He misses his family very much.

Mr. BAILON has no substance abuse issues, nor does he have any mental health issues. At 12 years old, he became an "official" fisherman under the tutelage

Sentencing Memorandum U.S. v. Bailon-Alvia, et. al. Case No. 21CR292-GPC

-7-

of his father—fishing is all he's known his entire life. He became quite proficient at it and has managed to support his family entirely with his skills as a fisherman. He also volunteers his time with a food donation organization gathering and distributing food to the needy. He wants to work towards his GED while in custody, and to also take college courses or vocational training classes to learn a new skill/trade since he doesn't know if being a fisherman will be a viable way of life anymore due to significant piracy in his country.

Since his arrest, Mr. BAILON has expressed sincere remorse and apologizes for his actions. He made a huge mistake and feels terrible for what he did. He acknowledges the severe dangers these drugs pose to the community. He recognizes he "made a very bad choice and has to pay for the consequences." He promises the Court that he will not commit future crimes. While in custody, he has remained productive. He completed the In-Service Kitchen Skills Training Program (Exhibit A) and has worked in the kitchen serving food, cleaning, and prepping meals since his arrest.

Upon his release, he intends to work at the port in the transportation industry as a taxi or shuttle driver, unless he can learn another worthwhile trade while he is in prison in this case.

///

///

Sentencing Memorandum	U.S. v. Bailon-Alvia, et. al.	Case No. 21CR292-GPC

-8-

### a. Life as a Fisherman & Being Shot and Almost Killed by Pirates

As mentioned earlier, Mr. BAILON has been a skilled fisherman for over three decades. This is how he feeds his family. He has to maintain a license from the State and was required to undergo training supervised by Ecuador's Marine Corps. He works alone or with a small group of others each and every day. If he doesn't catch fish, he doesn't make any money. His father and grandfather taught him how to fish and all of the men in his family are, and have been, fishermen.

In November 2020, he was fishing when a group of pirates descended on his boat with the intention of stealing the motor from his boat. The pirates shot him twice with a shotgun: once in the arm and another in his abdomen. The pirates stole everything on the boat: the motor, gasoline, cell phones, and six boxes of fish. They then left him for dead. Some other fishermen found him lying in his boat and yelling for help and they rushed him to the Emergency Room. Had they not found him when they did, he would have likely died on that boat. The doctors removed 40 of the 41 small pellets from his body. The last one was not removed because of the risk of severing an artery in the process. The pellet is still in his body and he feels pain and discomfort from it on a regular basis.

Mr. BAILON has not attempted to fish since this incident out of fear of the pirates and the likelihood of being shot again—or even killed. His livelihood was taken away from him in the blink of an eye. He has no education and no training in

Sentencing Memorandum      U.S. v. Bailon-Alvia, et. al.      Case No. 21CR292-GPC

-9-

anything else. It is no coincidence that two weeks later he was arrested for this offense after initially being told it was a fishing job. He was desperate to support his family and felt worthless that he could not make any money to provide basic necessities for his wife and children.

***b. Aberrant Behavior***

Mr. BAILON's commission of this offense was an example of aberrant behavior. Although the guideline (§ 5K2.20) prohibits a formal departure for drug offenses such as this, the offense truly was an aberrancy of his usual conduct and as such should be considered under Section 3553 as circumstances surrounding the offense. This offense happened without significant planning on his part. The offense was, by all accounts, "a marked deviation by the defendant from an otherwise law-abiding life."

### 3. The Proposed Sentence Will Promote Deterrence

The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." ***Pepper v. U.S.***, 131 S.Ct. 1229, 1242 (2011). Mr. BAILON is 43 years old and has no prior criminal record. As a first offender, he presents a low risk of recidivism. *See* ***United States v. Duane***, 533 F.3d 441, 453 (6th Cir. 2008). Recidivism rates of true first-offenders, *i.e.* those without prior arrests or convictions, are significantly lower than those for other defendants in Criminal History Category I. *See* Michael Edmund

Sentencing Memorandum U.S. v. Bailon-Alvia, et. al. Case No. 21CR292-GPC

-10-

O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders"). In a case such as Mr. BAILON's, where he has no experience with incarceration prior to the instant offense, incarceration beyond that already recommended is not appropriate. Commission studies have further shown that individuals with zero criminal history points are substantially less likely to recidivate than all other offenders. ***United States v. Cabrera***, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (citing *Recidivism and the "First Offender"* (May 2004)). Under the circumstances a sentence significantly below the guideline range is warranted because it is extremely unlikely that Mr. BAILON will engage in future criminal activity, and any sentence handed down by the Court will serve as an adequate deterrence. *See* ***U.S. v. Cabrera***, 567 F.Supp.2d 271 (D. Mass. 2008) (where Defendant convicted of poss. of drugs with intent to distribute and guideline range was 70-78 months, the court-imposed sentence of 24 months in part because "concerns about recidivism (see 18 U.S.C. § 3553(a)(2)(c)) compel a sentence still substantially" lower).

### 4. The Need to Protect the Public

Gainful employment is the best remedy to avoid recidivism and, thus, protect the public. Mr. BAILON, despite this conviction, is employable and plans to work upon completing his sentence. This is evidenced by the fact he has worked

as a successful and productive fisherman his entire life—since he was a young teen. By serving the recommended sentence, followed by gainful work, it is unlikely that Mr. BAILON will ever be tempted to commit a similar offense.

## IV.
## SENTENCING RECOMMENDATION

    Based on the foregoing facts and law, Mr. BAILON respectfully requests the Court impose a sentence of forty-six months (46) which is sufficient, but not greater than necessary.

Dated: May 30, 2022                          Respectfully Submitted,

                                                   *S/ Erik Bruner*
                                                   **ERIK R. BRUNER**
                                                   Attorney for Defendant
                                                   Galo Rosario Bailon-Alvia

Sentencing Memorandum        U.S. v. Bailon-Alvia, et. al.        Case No. 21CR292-GPC

-12-

# **EXHIBIT A**

(2) Certificates of Accomplishment: In-Service Kitchen Skills Training Program

# Canteen Correctional Services

## Certificate of Accomplishment

*Presented to*

**Galo Bailon Alvia**

*For successfully completing*

In-Service Kitchen Skills Training Program

*Presented on* August 1, 2021



S. Villamar
Instructor

R. Amady
District Manager



# Canteen Correctional Services

# Certificate of Accomplishment

*Presented to*

## Galo Bailon Alvia

*For successfully completing*

**In-Service Kitchen Skills Training Program**

*Presented on   July 30, 2021*



O. Palma
Instructor

E. Custodio
District Manager

